IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 SEP -8 PM 3: 34

DEPUTY CLERK_____

| | | |
|---|---|---|
| HIPOLITO ALVAREZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:13-CV-159 |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY PETITION FOR
## A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Petitioner HIPOLITO ALVAREZ filed a Petition for a Writ of Habeas Corpus by a Person in

State Custody challenging his conviction in Cause No. 58,169-B out of the 181st Judicial District

Court of Potter County, Texas, for continued sexual abuse of a child under fourteen. For the reasons

set out hereafter, the United States Magistrate Judge is of the opinion petitioner's application for

federal habeas corpus relief should be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

A. Procedural Background

On March 17, 2011, petitioner was convicted by a jury of continued sexual abuse of a child

under fourteen and was sentenced to ninety-nine years confinement and a fine of $10,000. The

court of appeals affirmed his conviction. *Alvarez v. State*, No. 07-11-00129-CR, 2012 WL 1726678

(Tex.-App.–Amarillo 2012, pet. ref'd). His petition for discretionary review was refused. PDR No.

M:\Data\CEA\HAB54\R&R\Alvarez-159.dny.wpd

0916-12 (Tex. Crim. App. Oct. 31, 2012).  Petitioner then filed a state application for writ of habeas corpus, which was denied without written order on July 17, 2013.  He filed the current action on August 26, 2013.

B. <u>Evidence</u>

On June 10, 2008, Maria Jiminez [Maria] contacted the Amarillo Police Department regarding an allegation of sexual abuse by petitioner against the purported victim, Maria's then ten-year old daughter, [V. J.].  Petitioner lived at 2007 North Cleveland with Maria and her two daughters, V.J. and her younger half-sister, L.J., who is the biological child of petitioner.  Also living in the home at the time were petitioner's nephew, Juan Carlos Ramos [Juan Carlos], his partner, Eileen Mejia [Eileen], and their three children.

Eileen testified she witnessed petitioner acting inappropriately with V.J, specifically that more than one time, he would kiss V. J., "a very abnormal kiss that a father usually wouldn't give his daughter on the mouth," and that V. J. would go into the bedroom when only petitioner was inside and the door would remain shut while they were inside.  One night, V.J. came to Eileen and Juan Carlos's room.  Eileen answered the knock on the door, and V.J. began crying and told Eileen that petitioner was abusing her.  Eileen clarified whether V.J. meant that petitioner was having sex with the victim, and V.J. affirmed that he was.  Eileen and Juan Carlos both told V.J. to tell Maria about the abuse, but Eileen did not tell Maria herself.  Approximately a week and a half to two weeks after V.J. told Eileen about the abuse, Juan Carlos reported to Maria what the victim had said, Maria spoke with V. J. about whether it was true, and then Juan Carlos and Maria called the police together.

Amarillo Police Officer Bermea responded to the call and went to the residence.  Due to the type of allegation and that the victim and her mother spoke primarily Spanish, Officer Bermea

requested a female, Spanish-speaking officer to the scene.  While Bermea was investigating, he had petitioner wait outside in his patrol car.  Petitioner asked what was going on and Bermea told him they were investigating a sexual assault on a child.  Petitioner immediately stated the child was lying, which Bermea felt was an unusual response since he had not conveyed which child was the purported victim or who the alleged perpetrator was.

Amarillo Police Officer Norma Smotherman arrived at the home to speak with V.J. and Maria.  She found both crying in the home.  V.J. told Smotherman that petitioner was wearing only boxers and had walked into the bedroom, removed her panties and pants, and put his finger in her vagina.  Based on V.J.'s statements and Maria's information regarding when they had moved, Smotherman determined the alleged abuse had been occurring for approximately one year, with the last incident occurring on June 8, 2008.   Smotherman then took V.J. and Maria to Northwest Texas Hospital for a sexual assault exam.

Danielle Livermore, a sexual assault nurse examiner, conducted the examination on the victim.  V.J. told Livermore petitioner had touched the victim's breasts with his hands and mouth, put his sexual organ inside her sexual organ and buttocks.  Livermore noted in her report a one centimeter tear to the victim's hymen, exposure of the anterior and posterior vaginal columns, and irregular edges to the hymen.  She also noted immediate dilation of the victim's anus with no stool present.  Livermore testified that the condition of V.J.'s vagina and anus were consistent with repeated penetration.

The victim, age 12 at the time of trial, testified via closed-circuit video.  She stated she was about to turn 10 when the abuse began.  Petitioner would kiss her "in my mouth," her breasts inside her shirt with his mouth and hands, and put his fingers in her "front part."  She testified that he

would put his "private" into her "front part," and it would hurt.  On a few occasions, petitioner put

his private part in her "behind," which would hurt "a lot."  At times, she stated petitioner would do

more than one of these acts at a time but petitioner putting his private part inside her "front part"

was the most common occurrence.  The victim testified the conduct always occurred in Maria and

petitioner's bedroom.  She testified that this usually occurred on the weekends because her mother

was at work and petitioner was home with V.J. and L.J.  She stated it happened "most weekends."

At trial, the victim admitted a couple weeks after petitioner left the home, she told her

mother it was not petitioner who was abusing her.  She stated her mom was laying in bed and crying

because she was sad about what happened to V.J., so V.J. told her it was Juan Carlos who did it.

V.J. testified that this was lie as Juan Carlos had never touched her private parts and she said it

because she thought it would make her mom happy.  Maria was still not happy, and eventually told

V.J. she had to tell her the truth.  She reaffirmed it was petitioner, not Juan Carlos, who had been

sexually assaulting her.  It is not entirely clear what period of time passed between V.J.'s initial

recantation and her eventual affirmation that the perpetrator was petitioner.  The victim simply says

"this other day," her mom told her she had to tell the truth, while Maria states it was about "two or

three months" from the recantation that she told V.J., "[y]ou have to say the truth.  You cannot say

something different just because you want to save him and you want the family to be together again.

You cannot blame someone else just because you want to save him."  After that, Maria testified that

V.J. confirmed it was petitioner and "[V.J.] felt that she had done something wrong, so she felt

better and felt that–at ease to say what happened."

The victim also acknowledged that she had not initially told her mother or the female police

officer everything that occurred because it was hard and she still had a hard time talking about what

had occurred at the time of trial. She said she told "the lady at the Bridge" everything.

Leta Acker, a therapist, testified that a child victim changing their initial account to accuse a different person is not uncommon, particularly when the perpetrator is the main breadwinner or when the other parent is upset or grieving. There was also testimony that it is common for child victims to reveal only part of what happened initially and tell more after they see that nothing bad happened as a result of the first revelation or as memories are triggered.

Two Department of Public Safety forensic scientists testified regarding the semen testing and hair analysis done in this case. One witness testified that no semen was indicated on the items submitted. The other witness performed the hair analysis. He testified that a three-inch stray hair was found when the nurse performed a pubic hair combing. First, he conducted a visual exam. He stated a visual exam is done first to determine if the hair in question is even visually similar to any of the sample obtained. If it is visually similar, he would do a more in depth analysis. If it is not visually similar to a sample, nothing further is done. The witness who performed the analysis stated that a visual examination of the hairs was all that was necessary to determine that the stray hair did not match petitioner's hair, pubic, or anal hair samples. He also testified that the stray hair was compared to V.J.'s pubic hair, but he did not have a sample of her head hair to compare to the stray hair. The hair was not consistent with V.J.'s pubic hair. Testimony was elicited that hairs can be transferred from one item to another. An example provided was if multiple pieces of laundry were stored in the same place, a hair could transfer from one piece of clothing to another.

Juan Carlos testified he never touched V.J.'s private parts, had sex with her, or had done anything inappropriate to her.

The jury returned a verdict of guilty of continuous sexual abuse of a child under fourteen and

then assessed punishment at ninety-nine years of imprisonment and a fine of $10,000.

## II.
## PETITIONER'S ALLEGATIONS

The Court understands Petitioner claims to be:

1.      Petitioner is actually innocent.

2.      No evidence supported petitioner's conviction.

3.      Petitioner's trial counsel was ineffective by:

      a.      Failing to investigate;

      b.      Failing to call an independent forensic DNA expert and failing to compare exonerating DNA evidence[1]; and

      c.      Failing to question the State's experts' credibility.

4.      Petitioner's appellate counsel was ineffective by:

      a.      Failing to raise claims on appeal; and

      b.      Failing to compare exonerating DNA evidence.

5.      The prosecution committed misconduct by:

      a.      Refusing to compare DNA evidence to another suspect;

      b.      Knowing petitioner is actually innocent because DNA evidence does not match; and

      c.      Ignoring their obligation to correct false testimony.

---

[1] Petitioner repeatedly references DNA evidence. No DNA testing was done in the present case as no semen was indicated and the stray hair was visually dissimilar to the samples obtained from the victim and petitioner, making it unnecessary for further DNA analysis.

III.

STANDARD OF REVIEW

A.  Federal Habeas Corpus Relief - 28 U.S.C. § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act, a petitioner may not obtain habeas corpus relief in federal court with respect to any claim adjudicated on the merits in the state court proceedings unless the adjudication of the claim resulted in a decision contrary to or involved an unreasonable application of clearly established federal constitutional law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

The Texas Court of Criminal Appeals heard and adjudicated on the merits the claims petitioner presents in his federal habeas corpus petition when it denied petitioner's application for state habeas relief without a written order, with the exception of the ineffective assistance of counsel claims, as discussed in a later section of this Recommendation.  *Ex parte Stauder*, No. WR-60,527-03; *see Harrington v. Richter*, 131 S. Ct. 770, 784, 178 L. Ed. 2d 624 (2011); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).  Petitioner's burden before this Court is significantly heightened in that petitioner cannot prevail even if he shows the state court's determination was incorrect.  Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts.  *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002).

In petitioner's prayer in his Written Objections to Supplemental Answer (ECF. No. 25), petitioner asks the Court to "conduct it's [sic] review 'De Novo' and review independently the claims of petition . . . ."  Under AEDPA, the Court is not permitted to do as petitioner requests.  The Court is limited to reviewing whether the state court's "adjudication of the claim resulted in a

decision contrary to or involved an unreasonable application of clearly established federal constitutional law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(defendant).  It is not proper for a federal habeas corpus court to conduct a de novo review.

## B.  Ineffective Assistance of Trial Counsel

The proper standard for reviewing a claim of ineffective assistance of counsel is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Under the two-pronged *Strickland* standard, petitioner must show defense counsel's performance was both deficient and prejudicial.  *Id.* at 687.  An attorney's performance was deficient if the attorney made errors so serious the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution.  *Id.*  That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession.  A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance.  *Id.* at 689.  Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable."  *Id.* at 690-91.  This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result.  *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *see also Cullen v. Pinholster*, 131 S. Ct. at 1403.

Additionally, petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial.  *Strickland*, 466 U.S. at 687.  Specifically, to prove prejudice, petitioner

must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 844, 122 L. Ed. 2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697. When a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and that presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013).

## C. Ineffective Assistance of Appellate Counsel

To make out a claim of ineffective appellate counsel, a petitioner must meet the two-prong test of *Strickland v. Washington. Smith v. Robbins,* 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). To establish deficient performance, a petitioner must show that counsel unreasonably failed to discover and raise nonfrivolous issues. *Id.* To establish prejudice, the petitioner "must show a reasonable probability that, [but for counsel's error], he would have prevailed on appeal." *Id.* at 285-86 (citing *Strickland,* 466 U.S. at 694). To do this, he must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Id.* at 288.

IV.
MERITS OF PETITIONER'S CLAIMS

*A.  Actual Innocence*

Petitioner asserts he is actually innocent and that no evidence supports his conviction.  Pet. for Writ of Habeas Corpus, ECF No. 3 at 6, Pet.'s Mem. In Supp., ECF No. 4, at 3–12.   Petitioner relies primarily on the evidence that the hairs found on the victim were not matched to him.  He asserts this exculpatory evidence proves someone else committed the sexual assaults, and accordingly, he is innocent.

A freestanding actual innocence claim is not cognizable on federal habeas review.  *See Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).  The only time the federal habeas corpus court can consider an actual innocence claim is when the petitioner is attempting to have the Court review on the merits an otherwise procedurally barred claim.  *See Schlup v. Delo*, 513 U.S. 298,314, 115 S.Ct. 851,860, 130 L.Ed.2d 808 (1995).

Actual innocence means "factual innocence and not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).  In order to establish actual innocence, petitioner must show, "'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him'" *Id.* (quoting *Schlup*, 513 U.S. at 328)).

A credible claim that constitutional error has resulted in the conviction of an innocent person is rare and "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.  Not only must a petitioner have a truly persuasive basis for relief, but the Supreme Court has also established "federal habeas relief would only be available if there is no state procedure for making such a

claim." *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003).

Testimony was elicited at trial that the stray hair found in the pubic combing did not match petitioner. Since the jury had an opportunity to consider this evidence at trial, it is not considered to be newly discovered. Further, the presence of a hair would not prove petitioner's innocence as there was also testimony hairs can be transferred from one item to another, such as clothing in a laundry pile, and photos and testimony at trial showed that the laundry for individuals in the victim's home was often piled together. Other evidence, the most inculpating being the testimony of the victim herself, was introduced that petitioner repeatedly sexually assaulted the victim. The presence of an unidentified hair not belonging to petitioner does not diminish the victim's testimony or that of any other witness at trial.

Petitioner has not shown an independent constitutional violation, and accordingly, his claim of actual innocence does not present a ground for federal habeas relief. *See Herrera*, 506 U.S. at 400. Further, Petitioner's evidence is not newly discovered and does not show he is actually innocent of the offense.

Petitioner's claim lacks merit.

### *B.  No Evidence*

In combination with petitioner's actual innocence claim, he asserts there was no evidence to support his conviction.    Pet. for Writ of Habeas Corpus, ECF No. 3 at 6, Pet.'s Mem. In Supp., ECF No. 4, at 3–12.

A claim of "no evidence" supporting a conviction is the same as a challenge to the legal sufficiency of the evidence. *See Haley v. Cockrell*, 306 F. 3d 257, 266–67 (5th Cir. 2002), *vacated on other grounds*, 541 U.S. 386, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004); *United States v.*

*Jackson*, 86 F. App'x 722, 722 (5th Cir. 2004) (applying insufficiency of the evidence analysis to a "no evidence" claim). Texas courts have consistently held that claims of sufficiency of the evidence must be raised on direct appeal and are not cognizable in post-conviction writs of habeas corpus. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims are not cognizable in post-conviction, collateral attacks); *West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996) (recognizing this legal principle under Texas law). The Texas Court of Criminal Appeals has clarified that "where an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and we subsequently dispose of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable." *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).

In his Petition for Discretionary Review, petitioner raised one ground for review regarding the Confrontation Clause and whether it was proper for the victim to be excused from testifying in open court. ECF No. 15-6 at 2–5. He did not raise a no evidence or insufficiency of the evidence claim in his PDR and his state application for habeas relief was denied without written order. Applying the Texas Court of Criminal Appeals holding in *Grigsby*, the state court did not find petitioner's no evidence claim cognizable in the state habeas proceedings.

Petitioner's no evidence claim is barred unless he can demonstrate cause and show prejudice or a miscarriage of justice. He has failed to make such a showing or to demonstrate that he was actually innocent of the crime of which he was convicted. Accordingly, his claim is procedurally barred from review by this Court. Even if it was not barred, the victim's testimony alone provided sufficient evidence to uphold the jury's verdict.

### 2. *Ineffective Assistance of Trial Counsel*

Petitioner claims his trial counsel was ineffective in four ways: (a) failure to investigate; (b) failure to call an independent forensic expert; (c) failure to compare exonerating DNA evidence; and (d) failure to question the credibility of the State's expert witnesses, Danielle Livermore and Leta Acker. Pet. for Habeas Corpus, ECF No. 3 at 6, Mem. in Supp. of Pet., ECF No. 4 at 4–5, Pet.'s Reply, ECF No. 17 at 6–7, Pet.'s Written Obj. to Resp.'s Supp. Answer with Br. in Supp., ECF No. 25 at 1.

### a. *Failure to Investigate*

Petitioner first claims trial counsel "failed to investigate newly discovewred [sic] evidence, which was available at the time of trial," "which was exculpatory in nature, that trial counsel failed to present said evidence at trial for defense purposes," and failed to investigate the victim's recantation. Pet. for Writ of Habeas Corpus, ECF No. 3 at 6, Mem. in Supp., ECF No. 4, at 4. From a review of the pleadings and record, it appears that Petitioner's Memorandum in Support includes virtually verbatim his grounds for relief and arguments as were submitted in his state application for writ of habeas corpus. *Comp.* Mem. In Supp., ECF No. 4 at 22–78 *with* State Application for Writ of Habeas Corpus, ECF No. 16-12 at 20–91. The Court of Criminal Appeals denied petitioner relief on the very grounds he asserts in the present claim. For petitioner to overcome the bar on relitigation imposed by AEDPA, he must show the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Instead, petitioner's only argument seems to revolve around the CCA's denial without written order. Pet.'s Reply, ECF No. 17 at 2. The Court finds petitioner has failed to meet his burden under the AEDPA.

Even if, however, he had satisfied the requirements, his allegations do not have merit.

Petitioner's claim that trial counsel failed to investigate overlooks (1) trial counsel did question witnesses regarding the stray hair not being a match to petitioner, (2) the letters written by Maria and V.J. which either expressed doubt as to the identity of the perpetrator or indicated that the victim missed petitioner were discussed in testimony and at least one was admitted, and (3) counsel introduced testimony about the possibility of Juan Carlos being the perpetrator rather than petitioner. Petitioner has not shown that trial counsel failed to render adequate assistance in regards to the testing of the stray hair or the potential of a different perpetrator.  Trial counsel effectively cross-examined witnesses with the evidence, which was not newly discovered, but was instead presented at trial. Petitioner has failed to show what exact actions of counsel were ineffective, what counsel should have done differently, or how petitioner was in anyway prejudiced. This claim does not have merit.

### b. Failing to Call an Independent Forensic Expert and Failing to Compare the DNA Evidence to Juan Carlos

Petitioner asserts trial counsel failed to call an independent forensic expert when DNA evidence pointed to someone other than petitioner being responsible. Pet. for Writ of Habeas Corpus, ECF No. 3 at 6, Mem. In Supp., ECF No. 4 at 4, Pet.'s Reply, ECF No. 17 at 7–8. He additionally alleges trial counsel should have compared the DNA evidence to Juan Carlos. *Id.*

Petitioner has not supplied the Court with any affidavit or other evidence from a forensic expert showing what their testimony would have been. Without such evidence, the Court must proceed with great caution on an ineffective assistance of counsel claim. *See Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). Not only has petitioner not presented evidence that a different forensic expert's testimony would have been favorable, but he has not shown any such expert would

have actually testified at trial, which is required to show prejudice under *Strickland*. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) ("In order for the appellant to demonstrate the requisite prejudice the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."). Additionally, "complaints based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain . . . ." *Id.*

The State's witnesses testified the stray hair was not a match to petitioner's pubic or head hair. They further testified that hair can be transferred from one object to another. There was evidence and testimony that the household laundry was piled and washed together at times. The hair could have been identified as belonging to Juan Carlos or any other member of the household without exonerating petitioner. The jury heard evidence regarding the hair and heard the accusations against Juan Carlos, and obviously rejected petitioner's argument that the hair proved his innocence or pointed to the possibility of a different perpetrator. The jury also heard Juan Carlos testify twice, including being asked direct questions about whether he had any kind of sexual or inappropriate actions with the victim. Trial counsel for petitioner cross-examined him each time, and elicited testimony that the jury could have taken as evidence of a troubled relationship with his uncle, his truthfulness and credibility, and his motivation in telling Maria about what V.J. had told him and Eileen.

While securing an independent forensic expert or having the stray hair compared to Juan Carlos could have been a reasonable trial strategy had counsel chosen to do so, petitioner has presented nothing showing trial counsel's representation was either deficient or prejudicial. Accordingly, this claim should be denied.

### c. Failing to Question the State's Experts Credibility

Last, petitioner alleges trial counsel was ineffective for failing to question the credibility of the State's witnesses, specifically that of April Lemming, Danielle Livermore, and Leta Acker. Mem. in Supp., ECF No. 4 at 4; Obj. To Resp.'s Supp. Answer, ECF No. 25 at 1.  He asserts these witnesses knew about the victim's recantation and accusation against Juan Carlos, but did not report this to the investigating officers. *Id.*  The Court notes the actual petition does not raise this claim, though it is in the Memorandum in Support, in which petitioner makes this claim in regard to Danielle Livermore and April Lemming.  In the Objections to Respondent's Supplemental Answer, he makes this claim in regard to Danielle Livermore and Leta Acker.  The Court assumes this claim is made in regard to April Lemming and not Leta Acker, as Ms. Lemming had spoken with the victim while Ms. Acker had never met the victim, though the analysis below would also apply to Ms. Acker.

The Court is unclear on what basis petitioner makes this claim.  Ms. Lemming and Ms. Livermore both appear to have spoken with the victim only on the day the report was made to the police department when the victim was taken to The Bridge for a recorded interview and to Northwest Texas Hospital for a sexual assault exam. Neither of these witnesses testified about being informed of any recantation, both testified the victim told them petitioner was the person who had sexually assaulted her, and both were cross-examined by trial counsel regarding their testimony as a whole.  Petitioner has failed to show how cross-examining these witnesses about the victim's recantation and accusation against Juan Carlos would have resulted in any testimony favorable to petitioner or would have undermined their credibility.  There was testimony by the victim's mother regarding the recantation and her attempts to get a lawyer or someone else to investigate to

determine what really happened, and there was testimony that the detective investigating the case did not know about an accusation against another individual, but there is nothing substantiating petitioner's claim that trial counsel was ineffective for failing to question Ms. Livermore or Ms. Lemming about this.  This claim is conclusory and without merit.

### 3. *Ineffective Assistance of Appellate Counsel*

Petitioner asserts counsel on direct appeal "failed to raise obvious colorable claims." Pet. for Writ of Habeas Corpus, ECF No.3 at 6.  In his Memorandum in Support, he states appellate counsel did not "muster the trial record thoroughly and did not research permanent law or exercise proper judgment.  It is clear that the applicant's claims have merit, as the state, has failed to establish the legality of the petitioner's confinement, by leaving the claims uncontested, therefor [sic] accepting them as true." Mem. in Supp., ECF No. 4, p. 5.  Finally, in his Written Objections to Respondent's Supplemental Answer with Brief in Support, he states, "Appellate counsel's ineffectiveness, as alleged in state and federal applications for habeas relief."  The only indication of the grounds petitioner asserts his ineffective assistance claim comes is from the portion of the Memorandum in Support that contains the verbatim pages of the state application for writ of habeas corpus. Mem. in Supp., ECF No. 4 at 34–35.  This contains no arguments of how the state Court decision on this claim was "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." *Id.*; 28 U.S.C. § 2254(d)(1).

Petitioner fails to specify the grounds appellate counsel should have raised, how he failed to gather the trial record, in what way he did not apply the law, or what errors in judgment he made.  By failing to brief this issue, he has not provided any factual or legal support for his allegation.

Although the Court is to "liberally construe the briefs of pro se appellants, we also require that arguments must be briefed to be preserved." *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

Not only has Petitioner provided only conclusory assertions, but he has not shown how he was prejudiced by appellate counsel's representation.

In addition to the above claims, petitioner asserts that, like trial counsel, appellate counsel failed to investigate newly discovered evidence and failed to compare exonerating DNA evidence. Petitioner provided no specific facts or arguments regarding what appellate counsel should have done. This claim fails for the same reasons detailed in Part 2.b.

### 3. *Prosecutorial Misconduct*

Finally, petitioner accuses the prosecution of misconduct by (a) refusing to compare the evidence "exonerating him" to another suspect; (b) knowing petitioner was actually innocent because the DNA did not match; and (c) failing to correct false testimony.   Pet. for Writ of Habeas Corpus, ECF No. 3 at 7.

The Court first notes petitioner again does not make a reasonable attempt to satisfy the standard set forth in the AEDPA.  He fails to show that the State court's resolution of this issue conflicts with established federal law.  Even so, the Court does not find merit to petitioner's claims of prosecutorial misconduct.

For a habeas petitioner to succeed on a prosecutorial misconduct claim, the Court must consider whether the conduct "so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). The misconduct must render the trial fundamentally unfair to Petitioner. *See Darden v. Wainwright*,

477 U.S. 168, 180–81, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). A trial is not fundamentally

unfair, unless "there is a reasonable probability that the verdict might have been different had the

trial been properly conducted." *Barrientes*, 221 F.3d at 753. Regarding petitioners first and second

points, these claims fail for the same reasons stated in part 2.b. It was the State's own witnesses

who testified that the stray hair found in the pubic combing did not match petitioner's head or pubic

hair and that no semen was indicated on any of the items tested. The prosecution elicited this

testimony. There was, however, also evidence that the hair not matching petitioner's did not

exonerate him. The witnesses detailed how a hair can be transferred from other objects, including

laundry of multiple people, and that laundry of multiple people within the home was often piled

together. Nothing in the evidence or witness statements proved petitioner was innocent, including

the unmatching stray hair, and the prosecutors cannot be said to have "know[n] petitioner was

actually innocent," because that was not consistent with the evidence. Petitioner puts undue weight

on the presence of a single non-matching hair. He equates this with evidence clearly exonerating

him of all accusations, but the evidence and testimony is not consistent with that premise.

Petitioner's hair samples not matching the stray hair from the pubic combing was exculpatory

evidence that the prosecution had a duty to turn over to the defense, which it did. There was a

reasonable explanation provided by the experts, however, regarding how the hair could have been

found in V.J.'s pubic combing that did not involve sexual assault. The great weight of the evidence,

including the direct testimony by the victim, supported petitioner being the perpetrator of

continuous sexual assaults. Petitioner has failed to show prosecutorial misconduct based on

petitioner's first two claims.

   Last, petitioner argues that the prosecution failed to correct false testimony. Pet. for Writ of

Habeas Corpus, ECF No. 3 at 7. It is not entirely clear what testimony petitioner claims was false

and which the prosecution knew about and failed to correct. In the copied pages of the State

Application for Writ of Habeas Corpus included in Petitioner's Memorandum in Support, petitioner

appears to have based this claim on an assertion that "Danielle Livermore's analysis and evaluation

of [V.J.'s] genatillia [sic] exam consisted of false statements, and faulty evidence." ECF No. 4 at

37–38. He also argues the prosecutors knew or should have known "state expert witnesses April

Lemmings and Danielle Livermore had suppressed 'Brady' evidence namely the recantation from

both state outcry witnesses Maria Jiminez and [V.J.] of the applicant having been responable [sic]

for the alleged offense, and the identity of Juan Carlos Ramos of being the perpitrator [sic] of said

offense."

It is well settled that the State may not knowingly use perjured testimony, and the state must

correct perjured testimony if known. *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31

L. Ed. 2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).

To prevail on such a claim, a petitioner must show the testimony was false, the testimony was

material, and the prosecutor knew the testimony was false. *Kutzner v. Johnson*, 242 F.3d 605, 609

(5th Cir. 2001). Contradictory testimony from witnesses, inconsistencies within a witness's

testimony, and conflict between reports, written statements and the trial testimony of prosecution

witnesses do not, standing alone, establish perjury. *See Koch v. Puckett,* 907 F.2d 524, 531 (5th

Cir. 1990) (holding that contradictory testimony from witnesses or inconsistencies in a witness's

testimony at trial are to be resolved by the trier of fact and do not suffice to establish that certain

testimony was perjured); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (1989) (holding

that the omission of certain facts from disclosed reports and written statements of the prosecution's

witnesses, alone, goes to the credibility of the witnesses, an area within the province of the jury, and does not establish perjury occurred); *United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987) (holding that inconsistencies between pre-trial and in-trial testimony do not, standing alone, establish perjury or put the prosecution on notice of possible perjury).

As detailed above, petitioner has not shown Ms. Lemmings or Ms. Livermore knew about the recantation, but even if they did, testimony from other witnesses revealed the victim recanted for a time, accusing Juan Carlos of the crime, but had told Ms. Lemming and Ms. Livermore petitioner was the person who sexually assaulted her. Regarding Ms. Livermore's testimony about the victim's physical examination and her testimony relating to the hymen generally, petitioner has not offered any affidavits of any medical experts or evidence of equal weight stating that the testimony offered by Ms. Livermore was false. In fact, he appears to base this entire claim on the "American Medical Association Encyclopedia" with no reference to a date of publication or testimony regarding its accuracy. The petitioner has not proven the testimony to be false, but assuming arguendo that Ms. Livermore's testimony was incorrect and material to the jury's verdict, petitioner has not shown that the prosecution knew it was false.

Petitioner has not shown the state knowingly failed to correct false testimony, and he has not shown the state court's rejection of this claim was unreasonable. Petitioner's allegations of prosecutorial misconduct are unfounded.

## V.
## RECOMMENDATION

Petitioner has failed to present any cognizable or meritorious claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate

Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person

in State Custody filed by petitioner HIPOLITO ALVAREZ be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____8th_____ day of September 2016.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the
event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is
fourteen (14) days from the date of filing as indicated by the "entered" date directly above the
signature line.  Service is complete upon mailing, Fed. R. Civ. Petitioner. 5(b)(2)(C), or
transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or
before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered"
date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report
and Recommendation."  Objecting parties shall file the written objections with the United States
District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely
file written objections to the proposed findings, conclusions, and recommendation contained in this
report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the
Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services
Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other
grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d
512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).